This is a suit to determine title to a strip of ground 25 feet wide, constituting a private roadway. The entire way, made a private road by agreement of the parties owning the land, Is one-fourth of a mile in length, but the part of it primarily in dispute here is the south end of such roadway. The plaintiffs claim the sole possession and absolute title, and defendant claims an Interest therein and right of user.
On May 28, 1906, one John Ulery, the common source of title, owned 40 acres, the southwest quarter of the southeast quarter of section 29, township 49, range 1 east, in Lincoln county. At that time and for some years prior thereto one Frederick Engelhardt owned 17 acres of land adjoining said 40acre tract on the south. On said day Ulery sold and conveyed to Frederick Engelhardt 9 acres off the south side of said 40-acre tract, and on the same day sold and conveyed to one Charles R. Walton a tract of 13 acres lying north of and adjoining said 9-acre tract, excepting, however, from said 13 acres, a strip of ground 12frac12; feet wide, extending the entire length of the north side of the 13 acres.
On May 28, 1900, Ulery, Walton, and Frederick Engelhardt also executed a contract in writing, duly acknowledged, which recited that whereas Ulery had on that day sold and granted, respectively, to Frederick Engelhardt the 9-acre tract, and to Walton the 13-acre tract, except the 12½ foot strip, that therefore, in consideration thereof and as a part of the original consideration for said sales, the parties covenanted and agreed as follows:
"First: That the said John R. Ulery for the aforesaid consideration hereby grants, bargains, and sells to the said Charles R. Walton and the said Frederick Engelhardt, and their grantors, heirs, and assigns forever a strip of land twenty-five feet wide off of the east end of the north half of the southwest quarter of the southeast quarter of section 29, township 49, range 1 east, in Lincoln county, Missouri, for the purpose, and the sole purpose of a private roadway to be used by the said Frederick Engelhardt and Charles R. Walton.
"Second: That said Charles R. Walton and said Frederick Engelhardt do for the aforesaid consideration hereby set apart and dedicate a strip of ground twenty-five feet wide off of the east end of the south half of the southwest quarter of the southeast quarter of said section 29, township 49, range 1 east, Lincoln county, Missouri, for the sole use and purpose of a private roadway to be used by the said Charles R. Walton and the said Frederick Engelbardt and their grantors, heirs, and assigns forever."
The agreement further provided that Ulery should have the right to construct the necessary ditches on, over, and along the west *Page 716 
side of said roadway, where it was located on the lands of Walton and Frederick Engelhardt, for the drainage of his land, but said ditches were not to obstruct the use of the roadway by Walton and Frederick Engelhardt. This agreement was filed for record on July 11, 1914, and was duly recorded.
On the day first mentioned, May 28, 1906, Walton executed a deed of trust on the 13 acres purchased by him to secure the payment of a note, and thereafter, on February 19, 1910, the 13-acre tract was sold by the trustee under that deed, and the plaintiffs F. A. Engelhardt and Edith Engelhardt became the purchasers and owners of said 13-acre tract. It appears from the record that F. A. Engelhardt and Frederick Engelhardt were brothers. The plaintiffs are husband and wife.
Prior to the time of the transactions that have been mentioned, on April 17, 1903. Frederick Engelhardt, as the owner of the 17-acre tract lying and adjoining on the south of said 9-acre tract, had executed a deed of trust to the plaintiff F. A. Engelhardt, as trustee, to secure the payment of a note payable to Anna Engelhardt. Frederick Engelhardt died about the year 1914 or early in 1915, and Benjamin F. Vieth was appointed administrator of his estate. Thereafter, on November 13, 1915, F. A. Engelhardt, as trustee in the deed of trust last mentioned, sold the 17-acre tract and certain other land therein included, and defendant Gravens became the purchaser of the 17-acre tract at that sale. The plaintiffs were present at this sale, plaintiff F. A. Engelhardt as trustee making the sale, and his wife, his coplaintiff, present, bidding upon the land, and Mr. Vieth, the administrator of the estate of Frederick Engelhardt, deceased, was also present. The circumstances connected therewith and what occurred at said sale have been made an essential issue in the pleadings and the testimony, and will be referred to later.
At the August term, 1916, the probate court of Lincoln county ordered the administrator of the estate of Frederick Engelhardt, deceased, to sell the 9-acre tract belonging to said estate, and under that order, the administrator, at a private sale, did sell the 9-acre tract to plaintiff F. A. Engelhardt, which sale was approved, and on November 13, 1916, the administrator executed his deed conveying the 9-acre tract to plaintiff F. A. Engel-hardt.
As has already been indicated, the plaintiffs, in their petition, alleged that they were in possession of and had absolute title to "a strip of land twenty-five (25) feet wide off of the east end of the south half of the southwest quarter of the southeast quarter of section 29, township 49, range 1 east, beginning at the north line of the south half of the southwest quarter of the southeast quarter of said section 29, township 49, range 1 east, thence running south to a point fifteen (15) feet north of the south line of said section 29, township 49, range 1 east." They alleged that the defendant claimed some interest therein, and plaintiffs asked that the title and interest of the parties, respectively, be determined.
The defendant, in his answer, set up the conveyances from Ulery to Walton and to Frederick Engelhardt, and alleged that under the aforesaid agreement made between those parties the strip of land 25 feet wide off the entire east side of the 40-acre tract had been sold and granted to each and all of the said parties, their heirs, and assigns, and set apart and designated for the sole purpose and use of a private roadway, to inure to the benefit of each and all of the parties to the contract, their heirs, and assigns.
Defendant next pleaded the sale of the 17-acre tract by plaintiff F. A. Engelhardt, as trustee, under the deed of trust executed by Frederick Engelhardt, and alleged that at said sale Vieth, the administrator of the estate of Frederick Engelhardt, deceased, had announced to bidders and prospective purchasers of that tract, in the presence and hearing of plaintiffs, that the right to use the roadway in issue for access to the 17-acre tract was appurtenant to that tract, and would pass to the successful bidder, and purchaser of that tract, and alleged that at said time the plaintiffs were the owners of the 13-acre tract, which has been mentioned, and of the private roadway appurtenant thereto. Defendant further alleged that after the 28th day of May, 1906, and during all the time the 17-acre tract was owned by said Frederick Engelhardt, the 25-foot strip was used by him, said Engelhardt, as a private roadway, and as a necessary appurtenance to said 17-acre tract; and that since the purchase by defendant of that tract defendant had continued in the uninterrupted use thereof under a claim of right to use the same — all of which was known to and acquiesced in by the plaintiffs. Defendant averred that the roadway had passed to him by virtue of the trustee's deed conveying the 17-acre tract, and by virtue of the announcement made by Vieth, the administrator, and assent thereto by plaintiffs, and that there-by plaintiffs were estopped from claiming any interest adverse to defendant's right to use the 25-foot roadway. He asked for a decree that he and his heirs and assigns be entitled to an easement in the 25-foot strip described in the plaintiff's petition for a private roadway, as a means of access, and appurtenant to the right of use of the 17-acre tract.
The reply was, first, a general denial, and, next, a special denial that defendant had any interest in the 25-foot strip of land off the east end of the north half of the 40-acre *Page 717 
tract; and plaintiffs again asked for determination of title to the 25-foot strip off the east end of the south half of the 40-acre tract.
The plaintiff F. A. Engelhardt lived in St. Louis at the time of and for some years after the purchase of the 13-acre tract, and for a time after the purchase of the 9-acre tract, and they were occupied by tenants in the interval. The 25-foot strip was used as a way by these tenants, and also by others, and was used by defendant to some extent after his purchase of the 17-acre tract. About 1917, however, plaintiff F. A. Engelhardt put a gate across this roadway. This gate, at first, was not locked. About 1919 plaintiff F. A. Engelhardt removed from St. Louis to the land, and afterward placed a lock onthe gate and kept it closed. F. A. Engelhardt testified that the gate was kept locked for two years before defendant broke the lock. The defendant, claiming the right to use the roadway, broke down the gate, and used the road, over the objection of the plaintiffs, and this suit followed. Two other roadways are referred to in the testimony. One was a private roadway, 15 feet in width, along the north side of the 17-acre tract. This led to a public road spoken of as the Bluff Road. The Bluff Road intersected both the 15-foot private roadway, just mentioned, and also the 25-foot roadway, the subject of this controversy. The 25-foot roadway was a better way than the 15-foot roadway. It is not In issue here. The gate erected by plaintiff F. A. Engelhardt appears to have been placed at or near the intersection of the 25-foot roadway with the Bluff Road, and, as we understand the testimony, this gate was across the roadway at a point where the roadways were on the Ulery land.
Defendant, in his testimony, said that at the sale of the 17-acre tract he was a bidder, and that plaintiff Edith Engelhardt was also a bidder and also some others; that during the bidding upon the land, in the presence of the parties, all of whom were within a few feet of each other, plaintiff F. A. Engel-hardt, trustee, making the sale, and Edith Engelhardt, bidder, defendant, inquired of Mr. Vieth, the administrator, who was present and only a few feet away, if the one who bought the piece of land then being sold would get the use of the 25-foot roadway known as the "Frederick Engelhardt road," and that the administrator answered "whoever bought that land would get the use of the Engelhardt road." Defendant testified that the inquiry and answer were spoken in a tone of voice loud enough to be heard 40 feet away. There was no testimony that plaintiffs made any reply or sign. The testimony was that this private roadway was known as the Fred Engelhardt road. Two other persons who were present at said sale corroborated the defendant in his statement that the inquiry was made by him and the answer given when the parties were standing not many feet apart at the place of sale, and before the bidding closed. The plaintiffs and Mr. Vieth testified that no such inquiry was made or answer given. Plaintiffs testified that the parties concerned were standing within a few feet of each other, and that if the inquiry and answer had been made in an ordinary tone of voice they could have heard it. Defendant's testimony further was that after he had made the inquiry mentioned, and received the answer, the bidding was resumed; that plaintiff Edith Engelhardt thereafter bid upon the land; that defendant and said Edith Engelhardt were thereafter the only bidders, and because of the statement there made, that in the purchase of the said 17-acre tract he would get the right to use the roadway, he considered the land more valuable, and bid more than he otherwise would have done, and thereby became the purchaser.
The court found and decreed that the "defendant, his heirs, and assigns have and are entitled to a license in and to a private roadway 15 feet in width off the east side" of the 40-acre tract south to a point 15 feet north of the south line of the 40-acre tract, "for the purpose and as a means of ingress and egress to and from the 17-acre tract." That is, the right so granted extended south to the other 15-foot roadway that has been heretofore mentioned as running east and west along the north side of the 17-acre tract.
From what has already been said, it is shown that plaintiffs, in their petition, offered only the south half or south end of the roadway as the subject of the controversy. This was the 25-foot strip off of the 9-acre tract and the 13-acre tract, extending south to the 15-foot east and west private roadway not here in issue. They did not describe a strip of ground off of the entire 40-acre tract, or, in any way describe a strip or roadway off the north half of the 40-acre tract. The north half of the 40-acre tract was retained by Ulery at the time he conveyed the south portion to Walton and Fred Engelhardt, but It is conceded that title to the north half of the 40-acre tract afterward passed to one Trescott, who owned it at the time this suit was brought.
The defendant in his answer referred to the subject in controversy as being the "land described in plaintiff's petition," or as being the land described in the contract of May 28, 1906, and "also in plaintiff's petition," and in his prayer he asked for a determination of title to the "25-foot strip of land described in plaintiff's petition," and for general relief. Notwithstanding this, and notwithstanding the fact, shown in the record, that the title of Ulery to the north half of the 40-acre tract had passed to Trescott, the court decreed to defendant a license in and *Page 718 
to a private roadway 15 feet wide across the tract owned by Trescott, as well as across the 9 and 13 acre tracts. The relief granted went outside the issues made by the parties in their pleadings, and went beyond the parties themselves.
[1, 2] The deeds made by Ulery to Walton and to Frederick Engelhardt, and the contract made by all three on the same day, and affecting the same subject, are to be read together. They related to the same subject; they were executed contemporaneously; they were executed upon a consideration moving all the parties concerned, and the contract explained, and fully consummated the intention of the parties to the deeds, and made all parts of a complete expression. Cook v. Newby, 112 S. W. 272, 213 Mo. 471. The effect was to create easements inhering in and running with the lands involved, or, as between Walton and Engelhardt, estates respectively and mutually dominant and servient. Under the paragraph of the contract first above set out, Ulery granted an easement upon his land, which was appurtenant to the 13-acre tract, and to the 9-acre tract, and, by the second paragraph, easements, reciprocal in character were granted appurtenant to the 13-acre tract and to the 9-acre tract. These were all private easements, created with and not existing separate and apart from the particular lands to which they were annexed. "An easement will never be presumed to be a mere personal right, when it can fairly be construed to be appurtenant to some other estate." 14 Cyc. 1141.
[3] The right to the 25-foot roadway, over the north tract owned by Ulery, was a right or easement appurtenant to the 13-acre tract and to the 9-acre tract. It was not a right assignable by the owners of those tracts as a right separable from the ownership of those tracts. Trescott, successor to Ulery in ownership of the north tract, held it subject to the easement inuring to the benefit of the 9-acre tract and the 13-acre tract, but otherwise he held it subject only to his own acts as owner. The theory of defendant was that he acquired an interest in the roadway as an easement appurtenant to the 17-acre tract. That easement was not made an appurtenance to the 17-acre tract by the terms of the contract. This is so, regardless of the fact that during the time Fred Engelhardt owned both tracts he, as owner of the 9-acre tract, could use the roadway for the benefit of the 17-acre tract. But he could do this only in right of his ownership of the 9-acre tract. The finding of the court necessarily was a finding against defendant on his claim that he had an easement in the roadway appurtenant to the 17-acre tract, and in that respect it was right. The deed of trust under which defendant bought was executed three years before the grant of easement by The contract. Evidently the court concluded that the statement, attributable to Vleth, the administrator, the silence of plaintiffs, and the purchase by defendant, did not operate to create an easement, which is an interest arising only by grant or by prescription. 14 Cyc. 1143. It is said (19 C.J. 872):
"The distinction between a license and an easement is often very subtle and difficult to discern; but it is only important where the right in question has been conferred by parol and the question is whether the agreement created a mere authority to do acts upon the land of another, and hence may be given by parol or creates a privilege in the land and hence is void because not in writing."
A distinction between an easement and the permanent license given by the decree herein might be difficult to discern. The evidence does not show, and the court's decree is clearly not based upon any finding, that there was a use of the road by defendant and others, under a claim of right, adverse to the plaintiffs and their grantors before the time defendant purchased the 17-acre tract, or at all. There is no claim that the roadway had become a public road. The testimony of several persons living in the immediate vicinity was that they had been passing over it for about 15 years. But this was not said to have been done under claim of right adverse to the owners of the land. The controversy here is between plaintiffs and this defendant upon the issue raised by him, and upon the validity of the decree rendered by the court.
[4, 5] The defense of the action of the court in decreeing that defendant, his heirs and assigns, were entitled to a license as to the use of a 15-foot roadway is bottomed upon the claim of an estoppel arising in favor of defendant and against the plaintiffs, upon what occurred at the sale. It is plain and is to be borne in mind that a license in respect to land can only be given by the owner, or by one having an estate or interest in the land, or by his authorized agent. At the time of the sale plaintiffs owned only the 13-acre tract. The tract to the north, upon which the decret impressed a servitude in favor of the defendant, was owned by Trescott, successor in title to Ulery, and the 9-acre tract to the south of plaintiff's land was owned by the heirs of Frederick Engelhardt, deceased, subject to the payment of his debts. Plaintiffs neither by acts nor by silence could foreclose the rights of Trescott, who not only is not a party to this suit, but is not shown to have been present at the sale of the 17-acre tract.
Walton and Frederick Engelhardt could not enlarge the number of the persons who would be permitted to enjoy a license to travel upon the private way over Trescott's land. They could not at that time bind the owners of the 9-acre tract.
[6] Assuming that Vieth, the administrator, made the statement attributed to him, it may *Page 719 
be presumed that he undertook to speak for the estate of Frederick Engelbardt; but he was not at that time authorized to sell either the 9-acre tract or the 17-acre tract, or to bind the owners. The contention of defendant in support of the decree is that plaintiffs are estopped by their silence. The applicable rule on that point is thus stated:
"Estoppel by silence arises where a person, who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." 14 Cyc. 681.
Discussing the conditions of creation of an estoppel either by acts or spoken words, or merely by silence, it was said in Rice v. Bunce,49 Mo. loc. cit. 235 (8 Am. Rep. 129):
"In some cases silence is equally effective in estopping a party against speaking afterward. But if no one has been misled to his hurt, if no injury has arisen from the conduct, declarations, or silence of a party, he will not be estopped from contradicting them. It has been said that if, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel. And it has been ruled that silence does not estop when the party's deed is on record. But it should not be forgotten that there is a wide difference between silence and encouragement. A person whose deed is on record might be permitted to remain silent, but if his land is put up for sale, and without any notification he enters the list of bidders and induces and encourages others to bid and expend their money in its purchase, he ought not to be allowed to set up anything to the detriment of those who have been guided in their action by his conduct."
The dual relation of plaintiff Frederick A. Engelhardt at the time of the sale was that of an owner of the 13-acre tract, and of trustee making sale of the 17-acre tract under the powers given him by the deed of trust, and the relation of plaintiff Edith Engelhardt was that of an owner of the 13-acre tract and of bidder upon the 17-acre tract. She did not afterward become an owner of the 9-acre tract. Some further details of the circumstances of the making of the sale may be mentioned.
George Cooper, one of the two witnesses called by defendant in support of defendant's testimony concerning the statement of the administrator, testified:
 "I heard Mr. Eugene Gravens, while this land was being sold, ask about this road, the Fred Engelhardt road, that runs to this 17 acres, if the man that bought that would he get the privilege of using that road."
The court then asked several questions, bringing out the fact that the question was addressed to the administrator, and was answered by him. Then followed:
 "The Court: What did he say? A. He said he had the privilege to that road, the man that bought the 17 acres."
This witness said he did not think plaintiff F. A. Engelhardt said anything. The other witness, Whit Briscoe, told of Inquiry by defendant whether the man who bought the land would get the privilege of the road in question. The witness said: "He did not talk loud." Then followed:
 "The Court: Did he speak plain? A. Yes, sir.
 "The Court: In ordinary conversation? A. Yes, sir; Mr. Vieth spoke up and said he sup posed the road goes with that land. He said the road went with the land, the road went with the land — that is why he told it. I never heard Edith Engelhardt say anything."
The same witness, on his cross-examination, said:
 "Mr. Gravens said, `If I buy this land, will I get the use of the Fred Engelhardt road?' and Mr. Vieth said, `I suppose you will,' at first, but he taken that back and said he would. He first said, `I suppose so,' and finally said `he would get it.'"
The defendant testified that he did not inquire of the trustee, but that his question was directed to Vieth, the administrator. The defendant accepted the statement of Vieth, which was the statement of an opinion that the purchaser of the 17 acres would thereby acquire the right to use the roadway. The tract was being sold under a deed, which was of record, before the establishment of the private road which also was by an instrument placed of record. The means of knowing the terms of these instruments were open to defendant. He said in his testimony he knew of the contract made in 1906, and knew Fred Engelhardt owned the 17-acre tract prior to 1906. The means of knowing the extent of the authority of Vieth were open to defendant. Defendant knew that the 9-acre tract was owned by the heirs of Fred Engelhardt, deceased. He knew that Trescott owned the north 20 acres, and that the termini of the road lay upon these tracts. He knew that plaintiffs then owned the 13-acre tract only. Whether plaintiffs were under such a duty to speak that by the failure to do so they were estopped is to be judged by the circumstances. They could not bind Trescott. They could not bind the heirs of Fred Engelhardt, and there is no showing that Vieth could bind the latter, or their land. The 9-acre tract, when subsequently ordered to be sold by the administrator, was open to purchase by others. Under all these conditions we hold that plaintiffs were not under such a duty to speak as to estop them. We hold that defendant did not acquire an interest in the easement of a roadway in the 25-foot strip over the 9-acre tract and the 13-acre tract, and did not acquire a permanent or irrevocable license of the 15-foot roadway, as found in the decree. The decree does not find that the plaintiffs owned the 9 and 13 acre tracts, nor does it make any ascertainment and determination of their title at all, *Page 720 
except inferentlally, in finding that defendant was entitled to the license for a 15-foot roadway over those tracts and over the Trescott land also. It is not disputed that plaintiff's acquired the interests of Walton and Frederick Engelhardt in the tracts conveyed by Ulery. Plaintiff F. A. Engelhardt testified that, after he bought the 9-acre tract, he, as owner of both tracts, claimed to be the absolute owner of the land covered by the 25-foot strip of private roadway, created by the contract over the 9 and 13 acre tracts, and so held possession of it. The question of the right of Trescott, if any, to construct and maintain drains over that strip is not in issue here. The plaintiffs, as against this defendant, were entitled to a decree.
The judgment is reversed and the cause remanded, that a decree may be entered for plaintiff's in accordance with what has been said.
SEDDON, C. concurs.
PER CURIAM. The foregoing opinion by LINDSAY, C., is hereby adopted as the opinion of the court.
All the Judges concur.